Good morning, and may it please the court. There are two very different issues in this appeal, the first dealing with a search warrant, and the second with the sentencing statute, what's the mandatory minimum and maximum. So the first issue is pretty straightforward. The evidence in this case came from a state warrant that was based on an application that explained how a woman had come into the police station, essentially out of the blue, and said that her neighbor had told her that he looked at child pornography. Her story was pretty detailed, and obviously the officer found it disturbing, but that's all it was. It was just her story. That was what was in the application. There was nothing corroborating it, no investigation described. So at this point, no one is arguing that that's probable cause, but the question is whether a reasonable officer could think, could incorrectly think, that it was probable cause. But there's really no cases with what we have here where there's a finding of probable cause. You see, you suggest that we can't assume that Chief Terpstra consulted with a prosecutor before applying for the warrant. Why wouldn't the statement in his police report that he intended to contact the prosecutor, coupled with the district attorney's signature on the affidavit, be enough to demonstrate that he did indeed consult? I assume that he had contact with the district attorney. We've had to sort of figure out, she is the notary, she is the district attorney. But there's absolutely nothing in the report describing a conversation, sharing any concerns about the case, with the district attorney mulling through the challenges of what we have here, which is just a single woman's story, a woman that nobody knew before she walked into the police station. So there are a couple of cases where the court has said that consultation with the prosecutor is an important factor. But in those cases, there was evidence of a consultation. So I don't mean to say there was no contact with the district attorney, just that we don't know what, if any, conversation was had and whether she really thought through the legal problems in this case or simply notarized a warrant. So the only cases where you have essentially an unknown person reporting to an officer a crime and that being sufficient for probable causes, in some old arrest cases, he is running off with this and the cop goes and gets it, not home searches. But even in those cases that were cited here, there's something more than what we have here. Either the officer knows the person, the person was on the job, or there was actually some corroboration. So this is really far lower than anything this court has seen and found probable cause, so it's just not close enough for good faith. Well, this seems to be different than most, whatever you want to call it. I don't know what everybody knew in this case, but I understand that the affidavit did attach the statement and that so we're assuming all involved is fully aware of her written statement. That's correct. The application, the police report was essentially a description of the statement and there was also the statement itself, so it's kind of a double. And this seems to be, well, very unusual, really, where someone did what she did. First of all, encounters this person. Now, when you look at the statement, whatever, I guess he was a, whatever you call it, a registered offender, whatever you have to do to, is that true or does it matter? Well, it wasn't part of the application. I know. That's why I say this whole thing, when she describes what he said and what he did and what her reaction was, was pretty amazing, actually. She, first of all, the statement where it says that I don't have anything to worry about, meaning her. This is what he tells her. I don't have anything to worry about because, in fact, she has two little boys and he's only interested in girls. And then it goes on to say that he could be, I have trouble reading, he said he felt like he had to tell me because he was my neighbor and I have, and she had young kids, so he felt necessary to tell her this. I don't know whether that's the only person he ever told or whatever, but it's, the whole conversation and whatever, and her reaction was pretty alarming. She, single mother, had two little kids, moves out, stays with her mother that night, and then writes this out. I don't know what period of time passed between that encounter when moving out and going to the cops. How long did that take? A couple days, one day. It was over the weekend. Right away, pretty much. And so she thought it was necessary to go in and say what this, I don't want to use any nicknames for him, but this is pretty bad, what he did and said he did and what kind of a person he was. Right, so this is very unusual. I mean, the woman coming into the station out of the blue, talking about a conversation that came out of the blue, but we have to remember that literally everything in her story is simply from her. The fact that she was his neighbor, the fact that she was essentially a citizen informant, her children, what he told her, anything. It was all exclusively from her story, which the police then had an obligation to corroborate something, at least look into her, look into Mr. Gieseland, look into really any facts that would show, under the totality of the circumstances test, there isn't sort of a checklist like you must have this, this, and this. A deficiency in one area can be made up for in another area. So you don't think that the fact that she appears in person, she signs her certified statement, she comes very quickly to the police station, you don't think any of that makes her more credible than many other sources of police information? Well, a couple of things. I mean, again, we know from her story, she says this happened recently, she says she came in quickly. But in some, I mean, we all know that there are issues with confidential informants and the people that police are usually dealing with. They have a lot of baggage, but we know their baggage. I mean, we know who they are, where they're from, or at least the officers do, and they can say, you know, we found this person to be reliable in the past, and we know what they're after. In this case, because they rushed so quickly, you know, perhaps because she seemed alarming, it alarmed the officer, and he felt like he had to rush, but this wasn't a situation where there was an exigency. What the officer needed to do was investigate the report that was made and include additional facts related to his investigation to get a warrant that would stick. Do you want to go on to any other? Because you are in your rebuttal time. Okay, I'm sorry. Any other issues? Well, the second issue is the sentencing issue, and while the warrant issue is, of course, highly fact-specific, this doesn't involve facts, really, at all. We're just comparing a state statute to a federal standard. We're comparing legal elements, and we agree here that we need to have a categorical analysis, but we're not agreeing on what the federal standard is because, essentially, the government is arguing this court shouldn't even be defining a standard. It should just kind of say, well, obviously, his prior offense seems like a predicate here, but there are two really important points to make, and that's that the recent Supreme Court cases have made it clear that the categorical analysis requires a standard that provides notice, that can be applied consistently, that doesn't require judges to look into the underlying facts of the case or to make kind of spur-of-the-moment judgments, and second, that nothing is really obvious in this area of law with the categorical analysis, and that's particularly true where we're looking at a statutory rape-type offense that's a fairly recent legal creation and that has very specific policy judgments that are made by the various jurisdictions about ages, prescribed conduct, age differences. So the statute here was overbroad for two reasons, the lack of an age difference and also this very broad definition of sexual contact that doesn't mesh with the federal definition or the other states, and so, again, nothing is really— Well, what would be the appropriate sentence? Well, so the sentence was raised from a 0 to 10 statute to a 10 to 20. The judge in this case said, absolutely, I wouldn't give you anything higher than 10, but I'm required to give 10, so that's what I'm giving. I think an appropriate sentence would be the judge considering all of the facts and circumstances of the federal case and all of the facts and circumstances of Mr. Gieselin's history and coming up with an appropriate sentence under Pepper, under the 3553A factors. No mandatory? No mandatory. He's about 70 years old or something? He's quite old. I'm not sure his exact age. Be careful. Sorry. He's young at heart, maybe. Yeah. We don't know on that either. That's not the right answer. I'm sorry. I'm giving really terrible answers. But he is an older man, which, I mean, you saw from the record, obviously, he spent several weeks in the county jail before this charge even came. Not related to the particular issues here, but relevant to his age. Thank you. Thank you. Hello. It's Bluger. May it please the court, Julie Bluger on behalf of the government. As defense counsel noted, there are two distinct issues here. The first one is the search warrant. In the search warrant, the district court found there was no probable cause. We didn't object to that, and we're not appealing that. So we're not looking at the probable cause here. What we're looking at is did Chief Terpstra rely on this search warrant in good faith? There's no question that he had any bad motive. There's no question that the magistrate was not a neutral, detached magistrate. So we're only looking at was his reliance objectively reasonable? Now, I disagree with the defense attorney's statement that this was merely an uncorroborated statement by Susan Leppert. What Chief Terpstra did is he submitted a five-paragraph affidavit. In that, he said, there was a paragraph that says, I know. In following words, I know, it says, I know that this residence is a white building with purple doors. This residence is two-story. He also says, I know that Mr. Gieselin lives on the second floor. I know that the first floor is vacant. Now, he doesn't say how he verified this, but he does say, I know. So these are things that were presented to the magistrate, well, to the state court judge, who signed the search warrant. Was that to imply that she didn't make this up? Is that what he was trying to say, that he knows the time and the place and I guess you'd say the type of apartment? Yeah. He was saying that his personal knowledge was that this building did exist, that there was two apartments, that the top apartment was Mr. Gieselin. The bottom apartment was empty. But what about that adds to her credibility or adds to the inherent believability of her story? Well, that doesn't go to her credibility. That only goes to the fact that there was a little bit of corroboration, that it's not that the chief did nothing. What adds to her credibility is, as courts have looked at in the past, she came in immediately. As the magistrate and the district court noted, it was an incredibly detailed affidavit. And as they both noted, she used terms that she clearly was not familiar with. Pedophile, hebephile, which it turns out Mr. Gieselin is a hebephile. He is attracted to pubescent girls in contrast to a pedophile who's prepubescent. Her using terms that she clearly didn't know what they meant. So that gave it credibility that she's not making this stuff up. Or someone was coaching her on what to say. And the magistrate found that that was highly unlikely. He found that the chief saw her in person. The chief found her credible. The chief did look up that Mr. Gieselin was a registered sex offender and did have this prior conviction for molesting a five-year-old. He didn't include that. So that wasn't part of the probable cause. But that's part of his own belief as to why this was likely true. And so all we're looking at here is was it objectively reasonable. Now, defense says there's no cases that say this is probable cause. Okay, we're not arguing probable cause. We're saying good faith. And they can't cite any cases where this was found not to be good faith. In fact, they cite a case, U.S. v. Peck from 2003, where the district court found no probable cause. Or the district court found probable cause. On appeal, this court said, no, no, no probable cause. But there is good faith. And that's very similar to this case. But the good faith is the officer's reliance and good faith on the judge's decision. Yeah, the officer's reliance. And was it objectively reasonable? That's what we're focused on here. All right, well, you just pointed out something that I don't think, I don't, the record doesn't show the judge had, and that was that Geisler was a registered sex offender, was not part of the affidavit. So when, how would the officer know that the judge had that information, which I agree you would have, it would be good faith if you had that information. Well, so good faith, good faith is could he have objectively thought, right, that there was, that he could rely on this. And the magistrate says this was a close call. He says that in his opinion. The district court said if Chief Terpstra would have put in his warrant this prior conviction, then it definitely is probable cause. They're both saying this is a very close call. That's what good faith is. It's not something that's so obvious there's no probable cause. It's something that's very close, which goes to Chief Terpstra's reasonably relying on this. When it's a close call, how can you say, well, there's no way he could have relied on this? My second issue is the 10-year mandatory minimum. Now, 18 U.S.C. 2252b2 doesn't require an exact match between a prior state conviction and an equivalent federal statute. What it says is the prior conviction must relate to, in quotes, a federal offense. Now, we put in our brief that we believe this argument was raised because it wasn't brought up before the district court. So we believe that this would be a plain error review. But even if it's an Oval Review, whatever the court finds, it's clear here that what Mr. Gieson was previously convicted to relates to a federal offense. What he was convicted of was sexual contact with someone 12 and under. And what the federal statute is, is that sexual contact with someone under 12 is the conviction. Now, in Osborne, this court said that sexual behavior is abusive if it's similar to a federal crime of abuse. There couldn't be anything more similar than this. Were those words interchangeable, relates to, and similar? So what the statute says is relates to. What this court said in Osborne was similar. This court also said relates to. But in another sentence, they said similar. So I believe this court used it interchangeably. Someone who is convicted of – there couldn't be anything closer. This isn't the Osborne case. Where Osborne, this court was concerned about maybe it could be a 16-year-old who was touching an 18-year-old, and there's only a two-year state difference, and maybe that's not abusive. In this case, the oldest the child could be is 12. And so the only difference between the federal statute and the state statute is that one-year difference. That, in the government's view, is related to. Now, we believe that whether you give a generic meaning under DeCamps and Taylor or you look at the related to, either way, what Mr. Gieslin was convicted of follows. The Supreme Court has not made a ruling on which way you should go, but either way you go. Mr. Gieslin's prior conviction would trigger the 10-year mandatory minimum. Where would you draw the line, if you're correct, that an exact match isn't necessary in a case like Gieslin's? Would it be applicable, well, if there was, say, I don't know, a four-year difference in who could be convicted under a state statute versus the federal statute? Well, the difference here is, right, if there would have been the four-year age difference, this would have been an exact match. Because there's not the four-year age difference, the federal statute is under 12. The state statute is 12 and under. So the question, I guess, would be, so where would the government draw the line, right? Would it be 13? Would it be 14? What I can say is that we don't have the Osborne type of concerns here. This isn't going to be two high school students who are kissing. That's not what his previous conviction could possibly be for. What his previous conviction is for is we're touching someone who is under 12. And whatever line you draw, whether you say a specific bright line, 13, 14, this is going to fall under it. Thank you. Yeah. Two minutes. Thank you, Your Honor. I'll just make two extremely quick questions. Or, sorry, points. The first point is that, you know, the government here really emphasizes the sort of, like you did, Judge Mannion, the level of detail, the unusual nature of this to bolster the warrant. But, of course, good fiction is very detailed and interesting and novel. And the truth is also detailed and can be interesting and novel. And the only way for an officer or for a judge to tell the difference between fiction and truth is to investigate the case. And the second point I'm making about the sentencing issue, and that's although the government in their brief said that the court did need to use the categorical analysis, it sounds like at this point they're, I mean, they're throwing it out the window. Because if we're getting into relating to similar to, that's different from an elements to elements issue, which is what the Supreme Court said is required. You know, maybe not for things in the guidelines, after Beckles at least, but certainly when we're talking about statutory sentencing laws, there has to be an elements to elements match. And, you know, one case that wasn't cited in our briefs, because this hadn't been exactly raised there, there's a case, Mel Hawley, I think is how it's pronounced, v. Lynch. It's an immigration case from 2014. I could get a citation for it. But in that case, it was a categorical analysis in an immigration case where the law was relating to a controlled substance offense. And the government was essentially making the argument that a drug paraphernalia crime out of Kansas or somewhere related to a controlled substance offense, even if it wasn't one. And the court said, no, we need a match. This is a categorical analysis. Do send us a 28-J, because. Sure, I will. Thank you. I'm sorry, Your Honor. No. Thank you both very much. Okay, so we take an under-admitted.